Charles A. Brown
324 Main Street
P.O. Box 1225
Lewiston, ID  83501
208-746-9947
208-746-5886 (fax)
ISB # 2129
CharlesABrown@cableone.net
Attorney for Plaintiff.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHELLIE R. MILLER, a/k/a SHELLY R. MILLER, )<br>)<br>) Plaintiff, )<br>)<br> v. )<br>)<br>IDAHO DEPARTMENT OF HEALTH )<br>& WELFARE, an executive department of )<br>the State of Idaho; RICHARD M. )<br>ARMSTRONG, then Director, in his )<br>official capacity; STATE HOSPITAL )<br>NORTH, a division of the Idaho Department )<br>of Health & Welfare; and TODD HURT, )<br>Administrative Director, in his official )<br>capacity, )<br>)<br> Defendants. ) | Case No. _____<br><br>**COMPLAINT** |

Plaintiff, SHELLIE R. MILLER (hereafter "Ms. Miller"), by and through her attorney, hereby

complains against Defendants as follows:

COMPLAINT                                                      1

## I. NATURE OF THE CLAIMS

1. This suit is brought by the former employee of STATE HOSPITAL NORTH (hereafter "SHN").

2. Ms. Miller seeks damages, attorney fees, cost, and interest.

## II. PARTIES

3. Ms. Miller is an adult individual, competent to bring this action, a citizen of the State of Idaho, and a resident of Clearwater County, Idaho. At all times relevant to her claims, she was an employee of SHN until her termination. She was considered a "classified employee." "Classified officer or employee" is any person appointed to or holding a position in any department of the state of Idaho, which position is subject to the provisions of the merit examination, selection, retention, promotion and dismissal requirements of chapter 53, title 67, Idaho Code.

4. Defendant IDAHO DEPARTMENT OF HEALTH & WELFARE (herein "IDHW") is an executive branch of the State of Idaho established pursuant to Idaho law. Idaho Code § 56-1002, Article IV, § 20, Idaho Constitution. The "power of this department shall be vested in the director of the department who shall be appointed by and serve at the pleasure of the governor, with the advice and consent of the senate."

5. The head of IDHW is the Governor of the State of Idaho, and at the time Ms. Miller was terminated C.L. "Butch" Otter was the Governor. Brad Little is presently the Governor of the State of Idaho. *See* Idaho Code § 67-2402, Article IV, § 20, Idaho Constitution. David Jeppesen is currently the Director, but at the time of Ms. Miller's termination, Defendant RICHARD M. ARMSTRONG was the Director. At the time of the discharge as set forth below, Mr. Armstrong was a resident of the State of Idaho.

6. The IDHW Board (hereafter the "Board") is established pursuant to Idaho Code § 56-1005. The Board consists of eleven (11) members, seven (7) members of which are appointed by the Governor.

7. The Chairman of the Board since May 2017 is Darrell Kerby, who is a resident of the State of Idaho.

8. The other members of the Board at the time Ms. Miller was terminated included: Wendy Jaquet; Jim Giuffre; Janet Penfold; Richard Roberge, M.D.; Tom Stroschein, Vice-Chair; Stephen Weeg; Russell S. Barron, Director, Secretary; Senator Lee Heider; Representative Fred Wood; and Tammy Perkins. All of whom are or were residents of the State of Idaho and were acting in their official capacities.

9. STATE HOSPITAL NORTH, a division of the IDHW, was the employer of Ms. Miller and is under the control of IDHW. Its Administrative Director is Todd Hurt.

10. Defendant TODD HURT is a resident of the State of Idaho.

### III. JURISDICTION AND VENUE

11. This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 with respect to Ms. Miller's claims arising under federal law.

12. Venue is proper with this Court as SHN's and IDHW's principal places of business are within the jurisdiction of the Court and the conduct that occurred was within the jurisdiction of the Court and within the State of Idaho.

## IV.  GENERAL ALLEGATIONS

13.     Ms. Miller began working for SHN as a psychiatric tech trainee in April 1999.  By July 1999, she had obtained her State Certification as a certified nurses aid.  Then by August 6, 2003, she was no longer a trainee, but a qualified psychiatric technician.

14.     Throughout her career at SHN, Ms. Miller performed satisfactorily and received many V.I.P. (Value in Performance) recognitions, as well as receiving merit pay increases and performance bonuses.

15.     Ms. Miller's last performance review was dated May 10, 2016, and stated: "Over all Rating: ... • <u>Solid Performance</u>: This employee consistently exceeds performance expectations at the Achieves Performance level."  *See* Exhibit "A" attached hereto, which is a true and correct copy of the Employee Performance Evaluation from 05/15/2015 to 05/05/2016, and incorporated herein as though fully set forth.  Additionally, the summary to said evaluation stated:

> You continue to achieve a solid performance level.  You are an excellent example of a competent psychiatric technician.  You care deeply about the patients in our care and you interact with them in a friendly and non-judgemental [sic] attitude.  You don't hesitate to spend time in the milieu interacting with patients and so therefore you have excellent de-escalation skills.  Your positive attitude is contagious as you continually strive to develop and nurture a positive culture within the hospital.  You have worked diligently to improve communication with your co-workers as well as staff members from other departments.  Thank you for your dedication to State Hospital North and to the patients that we serve.

*Id.*, p. 10.

16.     In a letter written by James L. Larson, Clinical Supervisor Unit Four, authored on or about March 31, 2000, he stated:

> I write this letter to bring out the strong points Shelly provides the patients on unit four.
>
> 1. She is a hard worker always assisting the clinicians in day to day programming.
> 2. She ran a group called connecting and caring.
> 3. Shelly always puts the pt first assisting other staff in completing patient care.
> 4. She fills in for missing staff members you are on vacation or sick leave.
> 5. I have found Shelly willing to take charge of any difficult unit situation showing leadership and full partnership with other non nursing staff on unit four.
> 6. Shelly is friendly always bringing out the positive side of patient care. She supports her fellow staff members to the point of healthy problem solving.
> 7. I trust Shelly's judgment concerning patient care and correcting unit behavior problems. Patient's also trust Shelly and follow her suggestions for behavior change.
> 8. Shelly will complete tasks without having to be asked. She has years of experience in unit management.
> 9. Shelly can be counted on for all the little things it takes to run a unit.
> 10. Shelly tries to form partnerships not cause trouble for fellow staff. She looks for ways to be helpful.

*See* Exhibit "B" attached hereto, which is a true and correct copy, and incorporated herein as though fully set forth.

17. In May 2001, Ms. Miller was given a recognition award by the then Director Karl B. Kurtz of IDHW. Her work was recognized and honored with a Director's Award of Excellence for exceptional customer service. The letter further stated "Your leadership, expertise, positive attitude and contributions to your team are remarkable." She was again acknowledged in September of 2005 with the Director's Extra Mile Award.

18. Throughout her tenure as a psychiatric technician with SHN, Ms. Miller received satisfactory performance evaluations in relation to her job performance. Many of her Performance Plan & Reviews indicate "solid, sustained performance."

19. Ms. Miller had been employed by SHN /IDHW for 18 years, and her termination was improperly handled. She believed she had received approval for her requested time off from work. She had requested the weeks of April 25 to April 29, 2017, and May 2 to May 6, 2017. Unbeknown to her, the first week of her vacation request was not approved even though Ms. Miller was lead to believe that it would be approved.

20. Ms. Miller went on her vacation. SHN attempted to contact her by phone at her home. Her answering machine did record two messages by SHN, but then the message box became full. Ms. Miller was not at home during the requested vacation leave, and she did not own a cell phone at that time nor did she have the ability to retrieve her messages from her answering machine while she was away from her home.

21. Ms. Miller's version of what occurred, as found in her employment file, is:

> A: I don't have a cell phone, so they couldn't contact me if I wasn't home. I have worked there for 18 years and it has always been done this way. <u>I don't submit my vacation requests to a manager or supervisor, it goes into a basket and Suzy tells us if it has been approved. I don't know who approves the vacation</u>. When Suzy tells me it has been approved, then I believe her. When she told me she was working on it, and not to worry about it, I believed her. I didn't go back and check with her because I believed she would take care of it. When Randi told me she had all my shifts covered, I thought she meant all shifts for both weeks. I didn't have any reason not to believe her. This was all just a big misunderstanding. I told the employer that. When I said I would just call in sick if I didn't get the

>week off, I was just joking.  I didn't call in sick.  I thought I had the
>week off.  I thought Suzy had taken care of it.  I had the time coming.
>This was just a big misunderstanding.

(Emphasis added.)

22.     Ms. Miller was entitled to and was denied the full panoply of protections afforded by the Idaho Administrative Procedures Act and the Idaho Code, all of which, without question, were denied her.  Rather, the Defendants relied upon a letter, dated May 1, 2017, which attempted to proclaim that she was voluntarily terminating her employment, but even that letter failed to inform her of what rights she had and actually misinformed her as to the rights to which she was entitled even if it were a voluntary termination.

23.     On May 1, 2017, a formal letter was mailed to her, but in that letter she was not properly informed of her due process rights.  Idaho Code § 67-5315 imposes a legal requirement upon all departments to provide specific problem solving and due process requirements. The statutory requirements were not complied with.

The rule implemented in regard to said statute is IDAPA 15.04.01.200 and sets forth a formal problem solving procedure in IDAPA 15.04.01.200(01)(b) and (04) to be followed and a due process procedure in IDAPA 15.04.01.200(01)(a) and (06) which is required in regard to a termination of an employee. Ms. Miller was not afforded either protection.

As to the problem solving process, the letter only cited partially the IDAPA regulation and <u>eliminated</u> the following portion: "Any objections by the employee to the notice, must be received within five (5) working days of receipt of the notice, or acceptance of the separation/resignation will be presumed."  That ability to protest the termination would have

commenced a problem-solving and due process procedure. A true and correct copy of the May 1, 2017, letter is attached hereto as Exhibit "C" and incorporated herein as though fully set forth.

Thus, as can be seen by Exhibit "C," SHN / IDHW, despite the history set forth above, incorrectly declared that Ms. Miller by not returning to work within five (5) working days was considered to have "voluntarily separated." That ability to protest the determination would have commenced the due process as set forth in IDAPA 15.04.01.244.

24. Exhibit "C" reads, in part, as follows:

> Idaho Division of Human Resources and Personnel Commission rule 15.04.01.244 specifies that, "... an employee who has not returned to work within five (5) working days after approved paid or unpaid leave or release by his or her physician, shall be considered as having voluntarily separated."

*Id.*, p. 2.

> Whereas, the complete section of the IDAPA rule Defendants relied upon reads:
>
> **244.   SEPARATION UPON FAILURE TO RETURN TO WORK.**
> Except for those employees on authorized leave or placed on a register with reemployment preference prescribed by Rule 241.02.a., an employee who has not returned to work within five (5) working days after approved paid or unpaid leave or release by his or her physician shall be considered as having voluntarily separated. Such separation shall be treated as a voluntary resignation, and the employee shall remain eligible for reinstatement as provided under Rule 124. Written notification of his or her separation/resignation shall be mailed to the last known home address. **Any objections by the employee to the notice, must be received within five (5) working days of receipt of the notice, or acceptance of the separation/ resignation will be presumed. If objections are received within the timeline, a disciplinary separation (dismissal) or other formal disciplinary action may be pursued as provided in Rule 190.**
>
>                                                           (3-16-04)

*Id.*, p. 3 (emphasis added).

25. Oddly, the letter actually informs Ms. Miller of her termination which again is dated May 1, 2017. Ms. Miller does not even return from vacation until May 5, 2017, and because the letter does not inform her that there is a 5-day time period within which to challenge the decision nor does the letter inform her that the 5-day time period does not start until she receives the letter, she is faced with a situation where she is informed that her termination was a final act unless there was some "emergency" or that FMLA might apply.

> If you feel this notice is in error, or you have experienced an emergency in which you were unable to contact your supervisor, or if you believe this absence could be covered as FMLA, you must contact Human Resources no later that 4:00 p.m. on May 8, 2017.

*Id.*, p. 2.

Thus, the letter deems her as having voluntarily terminated as of April 29, 2017, and then the letter fails to give her any time period within which to properly challenge the decision, and then, due to the fact that she received the letter on May 6, 2017, the letter then imposed a deadline of May 8, 2017, within which she is suppose to act in some manner.

26. Additionally, on May 2, 2017, Ms. Miller was sent a notice with the subject line "Separation from State Employment on May 1, 2017." It discussed these various items: last paycheck and leave balances, IRS form W2, PERSI (retirement), medical & dental, basic life insurance, and voluntary term life insurance. It was another indication to Ms. Miller that she had been terminated.

27. Thus, the Defendants did not provide proper notice for a problem solving protocol but rather misinformed Ms. Miller as to her standing and her rights and without providing the proper time frame for her to respond.

28.     The Defendants pounce upon the above situation to declare that Ms. Miller has "voluntarily separated," but as can be seen by the above factual scenario there was no voluntary separation whatsoever, rather the Defendants used the mis-communication as to vacation as a reason to terminate Ms. Miller. Since the Defendants discharged Ms. Miller based upon the above factual scenario, they then should have provided her the full due process protections (and not just the problem solving procedure) as afforded by IDAPA 15.04.01.200(01)(a) and Idaho Code § 67-5315(2) which would have provided substantial due process protections and a chance for her voice to be heard in regard to what had occurred. She was denied these protections due to her being summarily discharged using the ruse of "voluntarily separated."

29.     Idaho Code § 67-5315(2) specifically reads as follows:

> No action of a participating department relating to a disciplinary dismissal, suspension or demotion, or an involuntary transfer shall be effective until the affected employee shall have received notice <u>and an opportunity to be heard</u>. The employee may then appeal to the Idaho personnel commission those disciplinary matters set forth in section 67-5316(1)(a), Idaho Code.

(Emphasis added.)

Thus, Ms. Miller was not afforded the due process rights as contemplated by this statute and as articulated by IDAPA 15.04.01.200(01)(a) and (6).

30.     It is difficult to believe that the Defendants would take away an employee's job who had worked for them faithfully, competently, and conscientiously for 18 years and pounce upon the mis-communication in regard to the vacation situation in order to label it as "voluntarily separated" instead of allowing the employee the full benefit of the administrative rules that would allow the due

process to take place in a manner where all of this could have been discussed, heard, and decided upon which, by its very definition, is what the concept of "due process" is all about.

31.     Thus, Ms. Miller was wrongfully discharged and she was deprived of her property rights without due process and in violation of SHN/IDHW's own policies, state and federal laws, and administrative procedures that protect said property rights and require that due process procedures be properly adhered to and that said protections be provided to Ms. Miller.

32.     Ms. Miller's last annual salary at SHN was $37,664.52, plus she had health and dental benefits, retirement benefits, and life insurance benefits, as well as Social Security benefits.

33.     Specifically, Ms. Miller communicated in good faith her intent to take vacation and submitted her written request. She had been told that her shifts would be covered.

34.     SHN took adverse action against her by terminating her employment before she could return to work at SHN.

35.     There is a causal connection between the protected activity and the Defendants' adverse action.

36.     Ms. Miller seeks actual damages of loss of future income and back pay, and lost benefits of accrued time toward retirement, medical, dental, and life insurance benefits, and attorney's fees and costs.

## V.  FIRST CLAIM FOR RELIEF

**(Deprivation of Plaintiff's Property Interest Without due Process in Violation of 42 U.S.C. § 1983)**

37.     Plaintiff incorporates the allegations of the above paragraphs herein.

COMPLAINT                                                11

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

38. Ms. Miller had a property interest in her employment and a reasonable expectation that her employment would continue.

39. Idaho Code § 67-5309(m) and IDAPA specifically provides that Ms. Miller can only be removed from her employment for cause, specifically for:

   a. Failure to perform the duties and carry out the obligations imposed by the state constitution, state statutes, or rules of the agency or the Division of Human Resources and Idaho Personnel Commission. Effective date (5-8-09)

   b. Inefficiency, incompetency, or negligence in performing duties, or job performance that fails to meet established performance standards. Effective date (5-8-09)

   c. Physical or mental incapability for performing assigned duties, if a reasonable accommodation cannot be made for the disabling condition. Effective date (5-8-09)

   d. Refusal to accept a reasonable and proper assignment from an authorized supervisor. Effective date (4-5-85)

   e. Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the agency. Effective date (5-8-09)

   f. Intoxication or being under the influence of alcohol, or the misuse of medications or controlled substances, while on duty. Effective date (5-8-09)

   g. Careless, negligent, or improper use or unlawful conversion of state property, equipment, or funds. Effective date (4-5-85)

   h. Use of any influence which violates the principles of the merit system in an attempt to secure a promotion or privileges for individual advantage. Effective date (4-5-85)

   i. Conviction of official misconduct in office, or conviction of any felony, or conviction of any other crime involving moral turpitude. Effective date (4-5-85)

    **j.**    Acceptance of gifts in exchange for influence or favors given in the employee's official capacity. Effective date (5-8-09)

    **k.**    Habitual pattern of failure to report for duty at the assigned time and place. Effective date (4-5-85)

    **l.**    Habitual improper use of sick leave. Effective date (4-5-85)

    **m.**    Unauthorized disclosure of confidential information from official records. Effective date (4-5-85)

    **n.**    Absence without leave. Effective date (4-5-85)

    **o.**    Misstatement or deception in application for employment. Effective date (4-5-85)

    **p.**    Failure to obtain or maintain a current license or certificate lawfully required as a condition in performance of duties. Effective date (4-5-85)

    **q.**    Prohibited participation in political activities. (Ref. Section 67-5311, Idaho Code) Effective date (4-5-85)

*See* IDAPA 15.04.01.190.

40. None of the above "causes" apply to Ms. Miller. Defendants' termination of Ms. Miller violated her rights to due process of law under the United States Constitution by firing her and by denying her a hearing and right to appeal her termination.

41. At all times relevant hereto, Defendants acted under color of state law when committing the acts complained of.

42. The Board via Defendant TODD HURT had the final policymaking authority and exercised that authority in terminating Ms. Miller in violation of the United States Constitution.

43. Defendants' conduct violated Ms. Miller's Fourteenth Amendment rights by depriving her of a property interest without due process.

44. Defendants' conduct violated the clearly established constitutional right to due process of which a reasonable person would have known.

45. As a result of the Defendants' actions, Ms. Miller has suffered and will continue to suffer losses. Ms. Miller is entitled to prospective relief, pursuant to 42 U.S.C. § 1983, et seq., including but not limited to: actual damages of loss of future income and back pay, and lost benefits of accrued time toward retirement, medical, dental, and life insurance benefits, and attorney's fees and costs as against Defendants RICHARD M. ARMSTRONG and TODD HURT in their official capacities. Plaintiff is entitled to attorney's fees and costs pursuant to Idaho Code § 12-117, as well as 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

## VII. SECOND CLAIM FOR RELIEF

### (Deprivation of Plaintiff's Liberty Interest Without Due Process in Violation of 42 U.S.C. § 1983)

46. Ms. Miller incorporates the allegations of the above paragraphs herein.

47. Ms. Miller had a property interest in her employment and a reasonable expectation that her employment would continue.

48. Ms. Miller also had a liberty interest in both her good name and reputation and in continued and future employment.

49. Defendants infringed upon these liberty interests by impugning the good name, reputation, honor, and integrity of Ms. Miller by terminating her employment.

50. Defendants' allegations of Ms. Miller's voluntary separation are part of her personnel file and were made known to the public at large and those in her industry. Therefore, these false allegations impose a stigma on her professional reputation.

51. As a result of Defendants' wrongful conduct, Ms. Miller's professional reputation has been adversely impacted and it has foreclosed other employment opportunities.

52. As a further result of the Defendants' actions, Ms. Miller has suffered and will continue to suffer losses. Plaintiff is entitled, pursuant to 42 U.S.C. § 1983, et seq., to compensatory damages of loss of future income and back pay, and lost benefits of accrued time toward retirement, medical, dental, and life insurance, and attorney's fees and costs.

53. Plaintiff is entitled to attorney's fees and costs pursuant to Idaho Code § 12-117, as well as, 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants and award the following relief:

a. Value of future income and lost benefits of accrued time toward retirement, medical, dental, and life insurance benefits;

b. Back pay, in amounts to be determined at trial;

c. Compensatory damages;

d. Pre-judgment and post-judgment interest at the highest lawful rate;

e. Attorney's fees and costs of this action, including expert witness fees, as appropriate; and

f. Any such further relief as justice allows.

DATED on this  17th  day of April, 2019.

/s/ Charles A. Brown
Charles A. Brown
Attorney for Plaintiff.

COMPLAINT                              15

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

# VERIFICATION

SHELLIE R. MILLER, a/k/a SHELLY R. MILLER, being first duly sworn on her oath, deposes and says:

That she is the Plaintiff in the above-entitled matter, that she has read the foregoing Complaint, well knows the contents thereof, and verily believes that the facts therein stated are true.

DATED on this  17th  day of April, 2019.

                                             /s/ Shellie R. Miller
                                             Shellie R. Miller
                                             a/k/a Shelly R. Miller

STATE OF IDAHO

COUNTY OF NEZ PERCE

Signed and sworn to (or affirmed) before me on the  17th  day of April, 2019, by SHELLIE R. MILLER a/k/a SHELLY R. MILLER.

         /s/ stamp                   /s/ Connie Lynn Bledsoe
         Comm No. 58512        Signature of notary public
(Stamp)

                                     My commission expires:  9/29/2023